# Exhibit A

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries ⌄

**09/26/2023**

**Summ Issd- Circ Pers Serv O/S**

Document ID: 23-SMOS-1190, for THE KROGER CO. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Judge Assigned**
DIV 13

**09/25/2023**

**Motion Special Process Server**

**Filing Info Sheet eFiling**
   **Filed By:** DANIEL FRANCIS HARVATH

**Note to Clerk eFiling**
   **Filed By:** DANIEL FRANCIS HARVATH

**Pet Filed in Circuit Ct**

PLAINTIFFS CLASS ACTION PETITION; REQUEST FOR SPECIAL PROCESS SERVER FORM.
   **Filed By:** DANIEL FRANCIS HARVATH
   **On Behalf Of:** BRIDGETTE COBURN

23SL-CC04045

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

## IN THE ST. LOUIS COUNTY CIRCUIT COURT
## STATE OF MISSOURI

BRIDGET COBURN, individually and
on behalf of all others similarly situated,

Plaintiff,

- against -

THE KROGER CO.,

Defendant

Class Action Complaint

Jury Trial Demanded

Plaintiff Bridget Coburn ("Plaintiff") alleges upon information and belief,

except for allegations about Plaintiff, which are based on personal knowledge:

1.    The Kroger Co. ("Defendant") sells slices of "Smoked Gouda" identified

as having a "distinctive, smoky flavor" under the Private Selection brand

("Product").




Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

## I.    SMOKING PROCESS

2.    Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3.    The drying action of the smoke and the different phenol compounds helps preserve protein-rich foods such as meat, cheese, almonds, and fish.

4.    The origins of smoking date to prehistory, as nomadic peoples experimented with fire and primitive cheese products.

5.    The earliest record of smoked cheese comes from ancient Rome, when an owner of a cheese shop was forced to share space with a baker.

6.    The baker's wood burning fire imparted a distinct flavor to the cheese, which varied based on the type of wood that was used.

7.    For example, wood chips from deciduous hardwood trees of the genus *Carya*, or hickory, provide a hearty and sweet flavor.

8.    During the second half of the twentieth century, the popularity of smoking decreased due to the prevalence of "smoke flavor," which is smoke condensed into a liquid form.[1]

9.    The past two decades have seen consumers increasingly embrace foods without additives.

---

[1] Matthew Sedacca, [Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor](), Eater.com, June 15, 2016.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

10. According to research group Mintel, this is partly due to media attention focused on lack of transparency in the food industry, and revelations about what goes into what people eat.[2]

11. This concern is especially acute given European Food Safety Authority ("EFSA") reports that many liquid smoke flavorings contain compounds at potentially toxic levels.[3]

## II. LABELING REQUIREMENTS

12. Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as composition, taste and the source of that taste.[4]

13. Consistent with these principles, Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938, which set standards and regulations for

---

[2] Lynn Dornblaser, Director, Innovation & Insight, Mintel, Clean Label: Why this trend is important now, 2017.

[3] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.

[4] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

what companies were required to tell consumers about food and beverages they sell. 21 U.S.C. § 301 *et seq.*

14.   Missouri adopted these laws in their entirety through Ch. 196, Food, Drugs and Tobacco, of the Missouri Revised Statutes ("Mo. Rev. Stat.") and accompanying regulations. MO Rev Stat § 196.010 *et seq.*; Missouri Code of State Regulations ("CSR"), 19 CSR § 20-1.045 ("Food Labeling").

15.   These laws consider a food "misbranded" if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); MO Rev Stat § 196.075(1).

16.   One way a product can be considered "misbranded" is if it fails to indicate a "common or usual name." 21 U.S.C. § 343(i); MO Rev Stat § 196.075(9).

17.   The "common or usual name" must "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a);

18.   Relevant to a common or usual name is the source of a food's taste, i.e., does a strawberry shortcake get its taste from strawberries, natural strawberry flavors obtained from strawberries, artificial flavorings, or a combination of these. 21 C.F.R. § 101.22(i); 19 CSR § 20-1.045.

19.   According to one commentator, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

able to rely on the label to readily distinguish between the two."[5]

20.   Even when a food has undergone some smoking, the addition of liquid smoke flavoring is required to be prominently disclosed on the front label, such as "with added smoke flavor," "natural smoke flavored" or "flavor added."

21.   The addition of liquid smoke flavor to cheese was significant enough to warrant a specific regulation for "Spiced, flavored standardized cheeses." 21 C.F.R. § 133.193.

22.   The FDA has warned companies that fail to inform consumers of foods advertised as smoked where their entire smoked taste is not from a smoking process.

23.   This includes where "true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor."

24.   The FDA was clear that "smoke ingredients [natural smoke flavor] are added flavors [and] should be declared in accordance with 21 C.F.R. § 101.22 [on the front of the label]."[6]

## III.  PRODUCT LABELING IS MISLEADING

25.   The Product's labeling is misleading because as a cheese with a federal standard of identity, the front label statement of "Gouda" is required to "include [] a

---

[5] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, Aug. 11, 2006.
[6] FDA Warning Letter, Smoked Seafood, Inc. d/b/a Little Mermaid Smokehouse, MARCS-CMS 515739 – June 27, 2017.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

declaration of any flavor [] that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b); 21 C.F.R. § 133.142 ("Gouda cheese.").

26. However, the front label statements of "Smoked Gouda" and "distinctive, smoky flavor" fail to disclose the addition of liquid smoke flavoring.



27. Gouda cheese that gets its smoked taste exclusively from being smoked is not a rare or pricy delicacy and exists in the marketplace.

28. This type of cheese is not technologically or otherwise unfeasible to produce, shown through the labeling of other brands, identified as "Smoked Gouda" and "Hickory-Smoked Gouda Cheese Slices."

6

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM




29.   These products are labeled identically to the Private Selection Smoked Gouda, even though they get their smoked taste entirely from being smoked over hardwoods.

30.   The result is that consumers are misled by products that appear identical, even though Private Selection Smoked Gouda is not equal in quality to those without added smoke flavor.

31.   Where Gouda cheese has undergone some smoking but boosts its smoke taste by adding liquid smoke flavor, other companies represent this by the required front label statements, shown as "Smokehouse Gouda – Gouda Natural Cheese with

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

Natural Smoke Flavor."



32.   Instead of disclosing the addition of smoke flavor on the front label,

Private Selection Smoked Gouda relegates this information to the ingredient list on

the back, where consumers in a hurry will not notice it.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM



**INGREDIENTS:** CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED.

33.   Consumers are misled because the absence of required, qualifying terms, i.e., "natural smoke flavored Gouda," "smoke flavored Gouda," or "Gouda with natural [added] smoke flavor," gives them the false impression that the Product's smoked attributes – including taste and color – are imparted only by smoking, when this is false. 21 C.F.R. § 101.22(i)(1)(i).

34.   The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

35.   Added smoke flavor cannot compensate for the Product not getting its smoked taste only from being smoked over hardwoods for several reasons.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

36.   First, liquid smoke flavoring lacks the delicate balance of phenolic compounds, including 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

37.   Second, the smoke generation process influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "smoke flavor," like trans-isceugenol and 4-methylsyringol.

38.   When foods like Gouda cheese are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

39.   Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

40.   Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

41.   This overlooks that nonvolatile compounds significantly contribute to smoke flavor.

42.   The "Smoke Flavor" and "Color Added" further misleads consumers by darkening the Product, giving the impression it was smoked for a longer period than it was.

43.   As a result of the false and misleading representations, the Product is

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

sold at a premium price, approximately no less than no less than approximately $3.39 per 10 slices (8 oz), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

44.   Plaintiff is a citizen of Missouri.

45.   Defendant is a citizen of Ohio.

46.   The Court has jurisdiction over Defendant because it transacts business within Missouri and sells the Product to consumers within Missouri from its grocery stores under the names of Kroger, Rulers, Gerbes Supermarket and/or Dillon's.

47.   Defendant transacts business in Missouri, through the sale of the Product to consumers within Missouri from its grocery stores under the names of Kroger, Rulers, Gerbes Supermarket and/or Dillon's.

48.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

49.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

revenue from the sale of the Product in this State.

50.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

51.   Venue is in this Court because Plaintiff is a resident of St. Louis County.

52.   Venue is in this Court because a substantial part of the events or omissions giving rise to these claims occurred in St. Louis County, which is where Plaintiff's causes of action accrued.

53.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling identified here in Missouri.

54.   Plaintiff became aware the labeling was false and misleading in St. Louis County.

## PARTIES

55.   Plaintiff Bridget Coburn is a citizen of St. Louis County, Missouri.

56.   Defendant The Kroger Co. is an Ohio corporation with a principal place of business in Ohio.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

57.   Plaintiff purchased the Product between September 2019 and the present, at grocery stores owned and operated by Kroger under the names of Kroger, Ruler Foods, Gerbes Supermarket and/or Dillon's, in this State.

58.   Plaintiff is like most consumers who look to the front label of a product to learn what it is and its key features.

59.   Plaintiff is like most consumers who prefer products, especially natural foods like cheese, which do not contain added flavorings, for the reasons indicated above.

60.   Plaintiff read and relied on the front label statements of "Smoked Gouda" and "Distinctive, Smoky Flavor" and the darker colored cheese slices.

61.   Plaintiff expected the Product's smoked taste was entirely from being smoked over hardwoods, instead of only some of its smoked taste being the result of such smoking.

62.   Based on consumer experience with how foods containing added flavoring would disclose such facts to consumers on the front label, Plaintiff expected that if the Product used liquid smoke flavoring in addition to any actual smoking process, this would be prominently presented to her on the label, by a statement such as "natural smoke flavored."

63.   Plaintiff did not expect that the Product contained added flavoring to provide or contribute to its smoked taste.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

64. Plaintiff bought the Product at or exceeding the above-referenced price.

65. Plaintiff paid more for the Product than she would have had she known its smoked taste was not entirely from being smoked but from added liquid smoke flavor.

66. The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

### CLASS ALLEGATIONS

67. Plaintiff seeks to represent the following class:

> All persons in the State of Missouri who purchased the Product in Missouri during the statutes of limitations for each cause of action alleged.

68. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

69. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

70. Plaintiff is an adequate representative because her interests do not conflict with other members.

71. No individual inquiry is necessary since the focus is only on Defendant's

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

practices and the class is definable and ascertainable.

72.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Missouri Merchandising Practices Act ("MPA")
Mo. Rev. Stat. § 407.025, *et seq.*

74.   Plaintiff incorporates by reference paragraphs 1-43.

75.   The purpose of the MPA is to protect consumers against unfair and deceptive practices.

76.   The labeling of the Product violated the MPA because the front label statements of "Smoked Gouda" and "Distinctive, Smoky Flavor" failed to disclose its smoked attributes were due in part to added liquid smoke flavoring, which was unfair and deceptive to consumers.

77.   Plaintiff believed the Product's smoked taste was entirely from being smoked and not from added liquid smoke flavoring.

78.   Plaintiff paid more for the Product, would not have purchased it or paid as much if she knew that its smoked taste was not entirely from being smoked but not from added liquid smoke flavoring.

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

79.   Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under this State's consumer protection laws, by paying more for it than she otherwise would have.

80.   Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

81.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

82.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### Breach of Express Warranty

83.   Plaintiff incorporates by reference paragraphs 1-43.

84.   The Product was manufactured, identified, marketed, and sold by Defendant and expressly warranted to Plaintiff and class members that all of its smoked attributes, including smoked taste, was entirely from being smoked and not from added liquid smoke flavoring.

85.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

packaging, in print circulars, direct mail, and/or targeted digital advertising.

86.  Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods which got their smoked attributes entirely from being smoked and without added smoke flavoring and developed its marketing and labeling to directly meet those needs and desires.

87.  Defendant's representations affirmed and promised that the Product got its smoked attributes entirely from being smoked and without added smoke flavoring.

88.  Defendant described the Product so Plaintiff and consumers believed it got its smoked attributes entirely from being smoked and without added smoke flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

89.  Plaintiff recently became aware of Defendant's breach of the Product's express warranty.

90.  Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and/or their employees.

91.  Plaintiff hereby provides notice to Defendant that it breached the Product's express warranty.

92.  Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers,

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

to its main offices, and by consumers through online forums.

93.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions, because it did not get all its smoked attributes entirely from being smoked but also from added smoke flavoring.

94.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Awarding monetary damages and interest;

3.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4.  Other and further relief as the Court deems just and proper.

Dated:   September 20, 2023

Respectfully submitted,

/s/ Daniel F. Harvath
Harvath Law Group, LLC
75 W Lockwood Ave Ste 1
Webster Groves MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

Electronically Filed - ST LOUIS COUNTY - September 25, 2023 - 06:18 PM

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Daniel F. Harvath

Harvath Law Group, LLC

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice* forthcoming